IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRACY L. JOHNSON,                          CASE NO. 2:03-cv-1230
                                           CRIM. NO. 2:00-cr-0024(2)

      Petitioner,

    v.                                    JUDGE GRAHAM
                                           MAGISTRATE JUDGE KING

UNITED STATES OF AMERICA,

      Respondent.


**ORDER and**
**REPORT AND RECOMMENDATION**

      Petitioner, a federal prisoner, brings this motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. §2255. This matter is before the Court on the amended petition, respondent's

return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the

Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an

evidentiary hearing is **DENIED**.

### I. FACTS

      This case involves the following facts, as summarized by the United States Court of Appeals

for the Sixth Circuit:

> After receiving a tip that Clark and Johnson were selling drugs while
> armed with firearms at 126 ½ East Sixth Avenue, Columbus, Ohio,
> agents from the Bureau of Alcohol, Tobacco, and Firearms and
> detectives from the Columbus Police Department, wired an
> informant, Stanley Davis, for a controlled buy in December 1999.
> Earlier that year, a Franklin County Grand Jury indicted Davis on a
> variety of charges, including possession of crack cocaine.
>
> At or about 4:45 p.m. on December 21, Davis purchased .9 grams of
> crack cocaine from Johnson at the 126 ½ East Sixth Avenue

residence. During the buy, Johnson slid a nine millimeter handgun out from under the sofa where he and Davis were sitting. Johnson then slid the gun back under the sofa and then pulled out a floral plate filled with crack cocaine. According to Davis, the plate contained about five or six hundred dollars worth of crack. At trial, Davis speculated that Johnson pulled the gun out by accident, that "he just grabbed the wrong thing at the wrong time." Clark was not present during this transaction.

Approximately two hours later, Davis made a controlled purchase of .8 grams of crack cocaine from Johnson and Clark. During this buy, Davis saw a handgun lying on the floor next to Johnson's foot. Because the gun was pointing at him, Davis asked Johnson to turn the gun around. During this encounter, Clark pulled a gun from the couch, played around with it and then returned the gun to the couch.

After a trip to a nearby convenience store for beer and cigarettes, Davis returned to the Sixth Avenue residence. While he was there, Johnson again grabbed his gun. In response, Davis asked "Why are you always grabbing that gun, man?" Johnson replied, "I'm going to put a slug in a nigger." Johnson was also handling the gun and pointing it in Davis's direction. Davis asked him to turn the gun the other way.

When Davis left the residence, Johnson, carrying his gun, escorted him to the door. As Davis testified:

A. When I was leaving, Tracy walked me down the stairs, and he had the gun in his hand, so I told him, I'm like, why is you always carrying that gun around? Nobody coming near me. Why are you carrying that gun? You don't need to walk me to the door with the gun.

On January 12, 2000, Davis made a controlled purchase of 2.6 grams of crack cocaine from Clark. During this purchase, Davis observed two nine millimeter handguns, one of which was on the side of the couch, and one of which was under a pillow. When Clark went to retrieve the crack for Davis in the bedroom, Clark picked up one of the handguns and carried it with him.

During this purchase, a dispute arose regarding the weight of the crack to be sold. Clark became suspicious that Davis was wearing a wire and made an attempt to frisk Davis. As Davis testified:

A. He was like, man, is you wired up, man? Get off of me, man, get

2

off of me. He started reaching behind me. He almost felt the wire, but he didn't.

Q. Did you push him away?
A. Yes, I did.

Q. What happened next?

A. After that, he stopped and he sat down and he looked at me and I looked at him. Then we started talking, and we threw the conversation off to something else...

After this buy, the federal agents and police detectives searched both 833 East Starr Avenue and 126 ½ East Sixth Avenue. At the East Starr residence, law enforcement retrieved a number of firearms.

After a jury trial, both Clark and Johnson were convicted of conspiracy in violation of 21 U.S.C. §846 (Count 1), two counts of distribution of crack cocaine in violation of 21 U.S.C. §841(a)(1)(Counts 2 and 4 for Johnson, Counts 4 and 6 for Clark). Clark was also convicted of possession of a firearm by a convicted felon in violation of 18 U.S.C. §922(g) and §9244(a)(2)(Count 8), and possession of counterfeit obligations in violation of 18 U.S.C. §472 (Count 9). The indictment did not specify a drug quantity attributable to Clark or Johnson, but the district court found that Clark possessed 7.1 grams of crack cocaine and that Johnson possessed 4.5 grams of crack cocaine.

*United States of America v. Clark, Johnson,* Nos. 00-4197; 00-4198, (6th Cir. June 24, 2002), Doc. #73.

## II. PROCEDURAL HISTORY

On February 10, 2000, petitioner was indicted by the federal grand jury for the Southern District of Ohio, Eastern Division, on conspiracy to distribute crack cocaine, in violation of 21 U.S.C. §846, two counts of distributing crack cocaine, in violation of 21 U.S.C. §841(a)(1), and two counts of carrying a firearm during or in relation to a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(I) and (ii). Doc. #9. While represented by counsel, petitioner proceeded to jury trial, and on May 5, 2000, was found guilty, as charged. Doc. #52. On September 21, 2000,

petitioner was sentenced to 77 months incarceration on counts 1, 2 and 4, to run concurrently, 84

months incarceration on count 3, to run consecutively to the sentence imposed on counts 1,2 and 4,

and 300 months incarceration on count 5 to run consecutively to the sentence imposed on counts 1,2

and 4.  Doc. #61.  Petitioner filed a timely appeal of his convictions and sentence to the United

States Court of Appeals for the Sixth Circuit.  He asserted the following claims:

> (1) Johnson argues the district court erred in denying his Rule 29
> motion for acquittal on his 18 U.S.C. § 924(c)(1)(A)(i) and (ii)
> convictions for "carrying" and "brandishing" a firearm during and in
> relation to a drug trafficking crime; (2) Clark argues the district court
> erred in denying his Rule 29 motion for acquittal on his section
> 924(c)(1)(A)(ii) conviction for "brandishing" a firearm; (3) both
> defendants argue the district court erred in imposing separate
> consecutive sentences for their respective section 924(c) violations;
> (4) Johnson contends that his trial counsel was ineffective in failing
> to move for a new trial because his section 924(c) convictions were
> against the manifest weight of the evidence; (5) Johnson argues that
> his thirty-two year sentence for two section 924(c) convictions
> violates the Eighth Amendment; and (6) both defendants assert that
> *Apprendi* required the government to prove the exact quantity of
> drugs attributable to each beyond a reasonable doubt.

*United States v. Clark*, 41 Fed.Appx. 745, unpublished, 2002 WL 1378235 (6th Cir. June 24, 2002).

On June 24, 2002, the Sixth Circuit affirmed petitioner's convictions and sentence.  *Id*. On July 17,

2002, the mandate issued.  Doc. #72.  On January 23, 2003, petitioner's petition for a writ of

*certiorari* was denied.  Doc. #77.

On December 23, 2003, petitioner filed the instant motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. §2255.  He asserts the following claims:

> 1. Whether *Ring v. Arizona* and *Apprendi v. New Jersey* renders 18
> U.S.S.G. §2D1.1 facially unconstitutional and petitioner's sentence
> invalid.
>
> 2. The district court lacked jurisdiction to convict or sentence
> petitioner under count one because count one failed to charge a

crime.

3. The testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication denied the petitioner due process of law and a fair trial.

4. Whether petitioner's conviction(s) violate the Fifth Amendment's due process rights and Sixth Amendment's guarantees of notice and jury trial, and is contrary to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 and *Ring v. Arizona*, 153 L.Ed.2d 556 because petitioner was sentenced to a term of 461 months imprisonment under 21 U.S.C. §§846, 841(a)(1) and 18 U.S.C. §924(c) without the constitutional protections of grand jury indictment, jury trial or proof beyond a reasonable doubt of elements of the offenses.

A. Petitioner['s] indictment was fatally defective, and trial counsel was ineffective for not objecting to it being dismissed.

B. The violation of petitioner's Fifth Amendment constitutional right to fair notice of the maximum sentence also violated his Sixth Amendment right to effective assistance of counsel.

C. The sentencing court erred in sentencing the petitioner to 300 months under an entirely separate statute (§924(c))not charged in the indictment, and based on the judge's finding of aggravating facts.

5. Trial counsel was ineffective for fail[ing] to allow petitioner to testify on his own behalf.

6. Petitioner should be entitled to an evidentiary [hearing] to show counsel was ineffective for fail[ing] to move for suppression of tape recordings.

7. Whether trial counsel['s] failure to object to constitutionally defective jury instruction constitute[s] ineffective assistance of counsel.

## I. CLAIM ONE

In claim one, petitioner asserts that the United States Sentencing Guidelines are unconstitutional as applied to him, because the judge instead of the jury determined the type and

quantity of drugs at sentencing, and because the indictment failed to specify the quantity of drugs.

This claim was considered and rejected on direct appeal:

> Where a defendant raises a cognizable *Apprendi* challenge in district court, and repeats that challenge on appeal, we review such claim *de novo. United States v. Humphrey,* 287 F.3d 422, 442 (6th Cir.2002). On the other hand, if a defendant fails to make an objection before the district court, we review for plain error. *Id.* Although both defendants lodged objections to the district court's findings regarding relevant drug quantity, we need not address whether their objections sufficiently preserved the *Apprendi* issue for appeal because neither defendant can articulate an *Apprendi* error. Both defendants argue that *Apprendi* required the government to prove the exact quantity of drugs attributable to each beyond a reasonable doubt. *Apprendi* provided that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000. A defendant may also assert an *Apprendi* violation "where he can demonstrate that the district court's factual determination resulted in an increase of the range of statutory penalties applicable to the defendant for purposes of sentencing." *Humphrey,* 287 F.3d at 447. Thus, "[a]ggravating factors, other than a prior conviction, that increase the penalty from a nonmandatory minimum sentence to a mandatory minimum sentence, or from a lesser to a greater minimum sentence, are now elements of the crime to be charged and proved." *United States v. Ramirez,* 242 F.3d 348, 351-52 (6th Cir.2001). *Apprendi* does not, however, apply to sentences "in excess of any particular range or based on any particular offense level under the Sentencing Guidelines." *United States v. Garcia,* 252 F.3d 838, 843 (6th Cir.2001). The district court's findings regarding the quantity of drugs attributable to Clark and Johnson did not increase their sentences beyond the 21 U.S.C. § 841(b)(1)(C) twenty-year maximum and did not increase the range of statutory penalties applicable to their conduct. Therefore, we reject defendants' *Apprendi* challenge.

*United States v. Clark*, supra.  Issues that were raised and considered on direct appeal may not

ordinarily be re-litigated in a §2255 proceeding.  *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir.

1996); *Stephen v. United States*, 496 U.S. 527, 528-29 (6th Cir. 1974)(*per curiam*).

To the extent that petitioner now asserts that his sentence violates the United States Supreme Court's June 24, 2004, decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004), *see Traverse*, this Court agrees with other courts that have considered the issue and concludes that *Blakely* is not retroactively applicable to petitioner's case.

In *Blakely v. Washington, supra*, the United States Supreme Court applied the rule expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), wherein the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.,* at 2536.

> Our precedents make clear... that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.... In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment,"... and the judge exceeds his proper authority.

*Id.,* at 2537 (citations and quotations omitted).  In a footnote, however, the Supreme Court expressly refused to address the implications of *Blakely* on the United States Sentencing Guidelines.  *Id*., at 2538 n.9.

Petitioner was sentenced on September 21, 2000.  His convictions and sentence were affirmed on June 24, 2002.  On January 23, 2003, his petition for a writ of *certiorari* to the United States Supreme Court was denied.  Therefore, petitioner's case became final long before the Supreme Court's decision in *Blakey*.  Additionally, the Supreme Court has not yet indicated that *Blakely* is to be retroactively applied to cases on collateral review.  Further, this Court is aware of no court that has determined that *Blakely* is retroactively applicable to cases on collateral review

7

*Blakely* itself was decided in the context of a direct appeal, and the Supreme Court has not since applied it to a case on collateral review.... In fact, the Supreme Court has strongly implied that *Blakely* is not to be applied retroactively. The same day the Supreme Court decided *Blakely*, the Court also issued its decision in *Schriro v. Summerlin*, --- U.S. ----, 124 S.Ct. 2519, --- L.Ed.2d ---- (2004), holding that *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which extended application of *Apprendi* to facts increasing a defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review. *Summerlin*, 124 S.Ct. at 2526; *see also Blakely*, 124 S.Ct. at 2548-49 (O'Connor, J., dissenting) (recognizing the Court's holding in *Summerlin* "that *Ring* (and *a fortiori Apprendi* ) does not apply retroactively on habeas review"); *see also McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir.2001) (holding that *Apprendi* is not retroactive to cases on collateral review); *In re Joshua,* 224 F.3d at 1283 (denying the retroactive application of *Apprendi* to permit second or successive habeas petitions). Because *Blakely*, like *Ring,* is based on an extension of *Apprendi,* Dean cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review.

*In re Dean,* 375 F.3d 1287 (11th Cir. 2004).

New constitutional rules of criminal procedure are generally not applicable to cases on collateral review. *See Shriro v. Summerlin*, --- U.S. ----, 124 S.Ct. 2519, 2522-23 (2004). Only "watershed" procedural rules are given retroactive effect so as to apply to convictions and sentences that have become final after direct appeal. *See id.* at 2523. A watershed procedural rule is one "without which the likelihood of an accurate conviction is seriously diminished." *Teague v. Lane*, 489 U.S. 288, 313, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

In *Summerlin*, the Court considered whether the rule announced in *Ring* applied retroactively. *See Summerlin*, --- U.S. at ----, 124 S.Ct. at 2526. Like *Blakely, Ring* applied *Apprendi* to a state's sentencing procedures. *See Ring*, 536 U.S. at 603-09. The Court concluded that where Arizona law permitted the death penalty given certain aggravating factors, such factors must be found by a jury, not a judge. *See id.* at 609....

On review, the Supreme Court... [held] that *Ring* was not a substantive rule because it did not alter the range of conduct subject to Arizona's death penalty. *See Summerlin*, --- U.S. at ----, 124 S.Ct.

8

at 2523. It further held that *Ring* was not a watershed rule because it is not clear that judicial fact finding "so seriously diminishe[s] accuracy as to produce an impermissibly large risk of injustice." *Id*. at 2535 (emphasis in original) (internal quotation marks omitted). Therefore, *Ring* does not have retroactive application. *See id*. at 2536. By that reasoning, *Apprendi* is not a watershed rule either. It follows, then, that *Blakely* is also procedural, rather than substantive, and that it is not a watershed rule.

*United States v. Stoltz*, 325 F.Supp.2d 982 (D.Minn. July 19, 2004);  *see also Simpson v. United States*, 376 F.3d 679 (7ᵗʰ Cir. 2004); *United States v. Einstman*, 325 F.Supp.2d 373 (S.D.N.Y. July 14, 2004); *Garcia v. United States*, 2004 WL 1752588 (N.D.N.Y. August 4, 2004).[1]  This Court concludes that petitioner's first claim is without merit.

## II. CLAIM TWO

In claim two, petitioner assets that the Court lacked jurisdiction because count one of the indictment, which charges petitioner with conspiracy to distribute crack cocaine, failed to include the *mens rea* of willfulness.  Petitioner also asserts, for the same reason, that he was denied fair notice of the charges against him.

Petitioner pursued a direct appeal without challenging the indictment or jurisdiction of this Court.  The Supreme Court has set a strict standard for review under §2255 of alleged errors that could have been, but were not, raised on direct appeal; an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a judgment that has become final.  *See*

---

[1]  The United States Court of Appeals for the Sixth Circuit recently held that "*Blakely* does not compel the conclusion that the Federal Sentencing Guidelines violate the Sixth Amendment." *United States of America v. Koch,* 383 F.3d 436, 438 (6ᵗʰ Cir. 2004).  The issue is currently pending before the United States Supreme Court*. See id,* citing *United States v. Booker*, 2004 WL 1713654 (Aug. 2, 2004); *United States v. Fanfan*, 2004 WL 1713655 (Aug. 2, 2004).

*United States v. Frady*, 456 U.S. 152, 165 (1982).  Petitioner must show "cause" for his failure to raise the issue earlier, as well as "actual prejudice." *Id.*, at 167-68; *see also Napier v. United States*, 159 F.3d 956, 961 (6th Cir. 1998).  The actual prejudice must result from a constitutional violation. *See Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).

As cause for his apparent procedural default, petitioner asserts the ineffective assistance of counsel. Attorney error may constitute cause sufficient to excuse a procedural default if it amounts to constitutionally ineffective assistance of counsel.  *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  *Id.*, at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*, at 697.  Because

the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other.  *Strickland*, 466 U.S. at 697.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52(1983)).

> To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.

*United States v. Martinez,* 981 F.2d 867, 872 (6th Cir. 1992), citing *Russell v. United States,* 369 U.S. 749, 763-64 (1962).  The indictment in this case complied with these requirements.

Count one of the indictment charged as follows:

> From on or about December 1, 1999, through and including the date of the Indictment, the exact dates being unknown, in the Southern District of Ohio, the defendants, Myron T. Clark, aka "Skinny", and Tracy L. Johnson, did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with each other and with diverse other persons, both known and unknown to the grand jury, to possess with the intent to distribute and to distribute cocaine base, commonly referred to as crack, a Scheduled II controlled substance, in violation of 21 U.S.C. §841(a)(1).
>
> In violation of 21 U.S.C. §846.

Doc. #9.  21 U.S.C. §846 provides:

11

> Any person who attempts or conspires to commit any offense defined
> in this subchapter shall be subject to the same penalties as those
> prescribed for the offense, the commission of which was the object
> of the attempt or conspiracy.

The indictment properly set forth the elements of the offense charged, including the required *mens rea* of "knowingly" and "intentionally." Doc. #9. Further, citation to the relevant provisions of a statute satisfies due process and provides sufficient notice of the elements of the offense charged. *United States v. Lentsch,* 369 F.3d 948 (6th Cir. 2004), citing *United States v. Martinez, supra,* 981 F.2d at 871-72; *United States v. Hedrick*, 207 F.Supp.2d 710, 715 (S.D. Ohio 2002), citing *United States v. Martinez, supra.*

Petitioner therefore has failed to establish the ineffective assistance of counsel under *Strickland* by reason of his attorney's failure to object to the indictment as constitutionally inadequate. He has likewise failed to establish cause and prejudice for his procedural default of claim two.

### III. CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial because the Court failed to issue the following jury instruction:

> You should never convict any defendant upon the unsupported
> testimony of such a witness [*i.e.*, confidential informant] unless you
> believe that testimony beyond a reasonable doubt.

*Petition*, at 16. Petitioner also asserts that he was denied the effective assistance of counsel because his attorney failed to request the above jury instruction. Petitioner argues that the lack of such jury instruction constituted plain error.

Petitioner's claim that he was denied a fair trial due to improper jury instructions should

12

have been raised on direct appeal, but was not.  Petitioner therefore must show cause for his failure to raise the issue earlier, as well as actual prejudice resulting from the alleged constitutional violation.  *United States v. Frady, supra*, 456 U.S. at 167-68; *Wainwright v. Sykes, supra*, 433 U.S. at 84.  Petitioner again asserts the ineffective assistance of counsel as cause for his procedural default.

The jury was instructed in relevant part as follows:

> Now, you as the jurors are the sole judges of the credibility or believability of the witnesses, and of the weight their testimony deserves.  You should carefully scrutinize all of the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.

> Consider each witnesses' intelligence, motive and state of mind and demeanor and manner while on the witness stand.  Consider also any relation that each witness may bear to either side of the case, the manner in which a witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported by or contradicted by other evidence in the case.

> ***

> Now, a witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something which is inconsistent with the witness' present testimony.  If you believe that any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.  If a witness is shown knowingly to have testified falsely concerning any material matter, then you have the right to distrust such witness' testimony in other particulars, and you may reject all of the testimony of that witness or give it such credibility as you think it deserves.

> ***

> Now, you have heard the testimony of a witness who has plead guilty to offenses.  This guilty plea is not evidence against any of these

13

defendants. Proper plea agreements are permissible under the law. However, a witness who hopes to gain more favorable treatment in his own case may have a reason to make a false statement because the witness wants to strike a good bargain with the government. While a witness who has pleaded guilty may be entirely truthful when testifying, you should consider the testimony of the witness with more caution than the testimony of other witnesses. You should give the testimony of this witness the weight that you feel it deserves in light of all of the circumstances, including any promises made to the witness, the plea agreement between the witness and the government, and any hopes of leniency on the part of the witness. The decision whether to accept the testimony of such a witness is entirely a matter for you to decide.

Now, the testimony of a witness may be discredited or impeached by showing that the witness has been convicted of a criminal offense. A prior conviction does not render a witness incompetent to testify, but it is a circumstance which you may consider in determining the credibility of the witness. And it is for you to determine the weight to be given to any prior conviction as impeachment.

Testimony of an informer. You have heard the testimony of a witness who acted as an informer for the government in this case and you also heard that he received consideration in exchange for his assistance to the police and to the government, including an agreement to recommend dismissal of the state charge of possession of criminal tools and the reduction of two state charges for receiving stolen property from felony to misdemeanor charges, and a stipulation that the sentences would run concurrently, and an agreement on the part of the state prosecutor to recommend a term of probation, all as reflected in a plea agreement dated November 10 of 1999.

Now, the use of informers is common, and it is permissible. However, you should consider and weight the testimony of an informer with greater caution than you would another witness. And you should consider whether the informer's testimony may have been influenced by what the police or the State of Ohio or the government promised him. It is entirely for you to determine the weight to be given the informer's testimony.

*Transcript,* Vol. V, at 847-851. The Court also appropriately instructed the jury on the

government's burden of proof beyond a reasonable doubt:

14

... the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all of the evidence in the case.

***

... A reasonable doubt is a doubt based upon reason and common sense. It would be the kind of doubt that would make a reasonable person hesitate to act.

Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs. Of course a defendant is never to be convicted on mere suspicion or mere conjecture, and the burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, for the law never imposes upon a defendant the burden or duty of calling any witnesses or producing any evidence. So if the jury should view the evidence in the case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, then the jury should of course adopt the conclusion of innocence.

A reasonable doubt exists whenever, after the careful, entire, and impartial consideration of all of the evidence in the case, the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty of the offense charged.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence, and since the burden is always upon the United States to prove the accused guilty of every essential element of the crime charged beyond a reasonable doubt, then the defendant has the right to rely upon the failure of the United States to establish such proof.

*Id.*, at 844-45.

In view of the foregoing, this Court concludes that petitioner has failed to establish the ineffective assistance of counsel under *Strickland* due to counsel's failure to request a jury instruction regarding the confidential informant. *See*, *supra*. Nothing in the record indicates that the jury instructions were inadequate or inappropriate. The jury was properly advised regarding the

burden of proof, and cautioned regarding the testimony of the confidential informant.  Further, the informant's testimony was corroborated by audiotapes made during the alleged transactions, and he was cross-examined by defense counsel.  *See, e.g., Robbins v. Mitchell*, 47 Fed.Appx. 350, unpublished, 2002 WL 3115583 (6th Cir. 2002)(No ineffective assistance of counsel where counsel failed to request special cautionary instruction regarding the credibility of confidential informant, where jury on notice that they needed to scrutinize credibility of all witnesses, informant's testimony was corroborated, and informant subject to vigorous cross-examination.)  Petitioner has likewise failed to establish cause and prejudice for his procedural default of claim three.


## IV. CLAIM FOUR

In claim four, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to the indictment as constitutionally defective because it failed to identify a specific offense penalty under 21 U.S.C. §841(b),[2] or quantity of cocaine, and he was

---

[2]  21 U.S.C. §841 provides in relevant part:

 (a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving--

(I) 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

16

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight; or

(viii) 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $8,000,000 if the defendant is an individual or $20,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment.

17

Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

(I) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or

$10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

(C) In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

(D) In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil or in the case of any controlled substance in schedule III (other than gamma hydroxybutyric acid), or 30 milligrams of flunitrazepam, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

(2) In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 3 years, a fine not to exceed the greater of that authorized in

thereby denied notice of the potential penalties he faced.  This claim is plainly without merit.

In *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit rejected this same argument.  In *Stewart,* defendants were charged with distribution of cocaine pursuant to 21 U.S.C. §841; however, "the indictment did not specify the drug quantity attributable to each Defendant."  *Id.*, at 309.  The Sixth Circuit held that the indictment was valid:

> We also emphasize that the constitutional error likewise does not lie in the indictment itself. The government's failure to allege a drug quantity does not render a drug distribution indictment constitutionally infirm. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("[An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."]). Instead, when

accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 6 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

(3) In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an individual, or both. If any person commits such a violation after one or more convictions of him for an offense punishable under this paragraph, or for a crime under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such persons shall be sentenced to a term of imprisonment of not more than 2 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both.

specific quantities are not alleged, a defendant should be sentenced under 21 U.S.C. § 841(b)(1)(C), which establishes the default statutory maximum sentences and does not require as an element of the offense a specific quantity of drugs. *See Page,* 232 F.3d at 543 (holding that because indictment failed to mention drug quantity and no such quantity was found by the jury, defendants could only be subjected to the penalties prescribed under § 841(b)(1)(C)). Thus, it would be imprudent for defense counsel to object to an indictment which, by all rights, is facially sound. To do so would be in direct opposition to his client's penal interests; the only logical outcome of such a challenge would be for the government to replace the charge under 21 U.S.C. § 841 with a more specific charge, specifically alleging a drug quantity, which might expose the defendant to a higher statutory penalty range. Instead of objecting to a valid indictment or jury instruction, the proper time for a defendant to raise a challenge to his sentence is at the time the actual violation occurs-- at the time of sentencing. *See United States v. Jackson,* 240 F.3d 1245, 1248 (10th Cir.2001) ("The error ... is best characterized as sentencing in excess of the statutory maximum penalty applicable to the offense of conviction.").

*Id.,* at 310; *see also United States v. Page,* 58 Fed.Appx. 79, (unpublished), 2003 WL 68150 (6th Cir. Jan. 7, 2003), citing *United States v. Cotton,* 535 U.S. 625 (2002).

Petitioner asserts that, because the indictment failed to specify quantities of crack cocaine, he was unable to make a reasonable decision as to whether to plead guilty. Petitioner asserts that he was denied the effective assistance of counsel because his attorney was unable to provide adequate advice as to whether petitioner should plead guilty or proceed to trial. Petitioner further alleges that he was not notified of the potential penalties he faced until the Presentence Investigation Report was prepared:

> [P]rior to trial, petitioner had to rely on pure guess-work as to the quantities of controlled substance involved in the drug offenses alleged in the indictment, and therefore he had no way of knowing the penalty he was subject to, or what plea should be entered.

*Petition,* at 21.

21

The *Strickland* analysis... applies to claims of ineffective assistance of counsel involving counsel's advice offered during the plea process. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). According to the Supreme Court, a petitioner who asserts that his counsel was constitutionally ineffective for encouraging him to plead guilty must prove both that his counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. Following *Lockhart,* we have held that a petitioner who claims that his counsel was ineffective for encouraging him to reject a plea bargain and go to trial states a viable Sixth Amendment claim. *Turner v. Tennessee,* 858 F.2d 1201, 1205 (6th Cir.1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989), *reinstated on other grounds,* 940 F.2d 1000, 1002 (6th Cir.1991). Such a petitioner must prove both deficient performance on the part of his counsel and that, but for his counsel's advice, there is a reasonable probability that he would have pleaded guilty. [FN1] *Turner,* 858 F.2d at 1206; *see also Paters,* 159 F.3d at 1046 (requiring defendant to show that "there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice"); *Gordon,* 156 F.3d at 380 (applying "reasonable probability" standard to claim that defense counsel's gross misadvice regarding potential sentencing exposure violated defendant's Sixth Amendment rights); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (noting that defendant who claims that his counsel's gross underestimation of his sentence led him to reject state's plea offer must meet the "reasonable probability" standard to prove prejudice).

FN1. The Seventh and Second Circuits have held that a defendant's post-conviction testimony that he would have accepted the plea is insufficient to establish prejudice. Instead, those courts have required the defendant to come forward with additional objective evidence to prove that the defendant would have accepted the plea offer. *Paters v. United States,* 159 F.3d 1043, 1047 (7th Cir.1998); *United States v. Gordon,* 156 F.3d 376, 381 (2d Cir.1998). Our circuit has not explicitly adopted such a requirement, although in *Turner* this court approved of a district court's decision which concluded that the defendant had offered sufficient objective evidence, in that he made a counter-offer to the government, that he would have accepted the government's plea. *Turner,* 858 F.2d at 1207. *Strickland,* however, only requires that a defendant demonstrate that there is a "reasonable probability" that the result of the proceeding would have been different. The Supreme Court has imposed no requirement that the

22

defendant meet his burden of proof through objective evidence.

*Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001).  Petitioner has failed to meet this standard.

Petitioner does not indicate, nor does the record reflect, that he was ever interested in any plea offer. Further, petitioner's allegations are unworthy of credit in view of the record before this Court. At the outset, it is noteworthy that petitioner's defense counsel, Neil W. Rosenberg denies petitioner's allegations in this regard:

> I informed Mr. Johnson in writing approximately two (2) months before the trial date of the potential mandatory penalties should he be convicted and the likely sentence should he accept a plea offer by the Government.  I discussed this with Mr. Johnson as well, prior to trial. Mr. Johnson indicated he understood the potential penalties and plea offer, and wanted to proceed to trial.

*Affidavit of Neil W. Rosenberg*, attached as Exhibit A to *Return of Writ*. Additionally, the February 2, 2000, complaint filed in this case indicates that, on December 21, 1999, the confidential informant met with petitioner and co-defendant Myron Clark at petitioner's apartment, and purchased .8 grams of crack cocaine from petitioner for $100.00.

> The CI stated that Johnson pulled a black 9mm pistol out from under the couch, pushed it back under, and then from the same area under the couch pulled out a white plate with a floral design, containing about $500.00 to $600.00 worth of rocks of crack. The CI stated that Johnson sold this product to him/her for $100.00 in previously recorded government funds.

Doc. #1.  Later that same evening, the confidential informant returned to the same address where petitioner and co-defendant Clark were present, and purchased .8 grams of crack cocaine from co-defendant Clark for $100.00.  *Id.*

> The CI said advised [sic] that when he/she entered these premises, both Clark and Johnson were sitting on the couch, and Johnson had

> a black colored 9mm pistol at his feet. The CI said that Clark pulled
> out the previously described plate from under the couch. The CI said
> that this plate contained about $500.00 to $600.00 worth of crack
> cocaine on it, and the CI paid Clark $100.00 in previously recorded
> Government funds for approximately .8 grams of this product.... [A]t
> the conclusion of this transaction, Johnson walked him/her to the
> door while carrying a pistol in his hand.

*Id*.  Petitioner was explicitly advised at his February 2, 2000, initial appearance of the charges

against him, the quantities of cocaine alleged in the complaint, and the penalties he faced.  Doc. #2.

The Magistrate Judge advised petitioner of all of the allegations against him, and petitioner indicated

that he understood. The Assistant United States Attorney explicitly advised petitioner that he faced

up to twenty years on each of the crack cocaine charges, three years supervised release, a one million

dollar fine, and a $100.00 special assessment.  The Assistant United States Attorney further advised

petitioner that he faced a seven year mandatory minimum sentence on the first firearm charge, and

a twenty year mandatory minimum sentence on the second firearm charge, along with three years

supervised release, a $250,000.00 fine, and a $100.00 special assessment.  The Magistrate Judge

likewise advised petitioner of the maximum penalties petitioner faced. The Magistrate Judge

appointed counsel on petitioner's behalf and advised petitioner that he should consult with his

attorney about the likely mandatory sentence under the United States Sentencing Guidelines.

Petitioner was asked whether he had any questions regarding the charges against him or the

proceedings on the charges, and he indicated that he did not.  *Audiotape of Initial Appearance*,

February 2, 2000.  In light of the foregoing, petitioner therefore cannot now contend that he had no

knowledge of his possible sentence. *See, e.g., Gonzalez v. United States*, 33 F.3d 1047, 1051-52 (9th

Cir. 1994)(Where defendant when pleading guilty was advised properly regarding the maximum

possible penalties, he could not establish prejudice from attorney's alleged gross error in calculating

possible sentence exposure.) Additionally, the allegations against petitioner, including the use of

firearms and the quantities of cocaine involved, were all made a part of the record which was readily

available to petitioner and to trial counsel. Such information also would have, presumably, been

provided in discovery, which was requested by defense counsel on February 22, 2000. Docs. #15-19.

Petitioner also asserts in claim four that he was improperly sentenced to 300 months on count

five, which charged him with carrying a firearm during and in relation to a drug trafficking offense

in violation of 21 U.S.C. §924(c)(1)(A)(I), (ii), and §2.[3]  Petitioner argues that he was improperly

sentenced because both firearms convictions resulted from a single course of conduct.  This claim

was considered and rejected on direct appeal:

> Both defendants argue that their respective drug offenses were not
> separate offenses, but were part of a continuing course of criminal
> conduct. A review of the record demonstrates, however, that
> defendants' section 924(c) convictions were, in fact, predicated on
> separate drug offenses. Simply re-characterizing separate offenses as
> a single pattern or a single course of conduct does not allow a
> defendant to escape a consecutive sentence. Clark engaged in two
> separate offenses--a December 21, 1999 sale of .8 grams of crack
> cocaine and a January 12, 2000 sale of 2.6 grams. Similarly, Johnson
> engaged in a December 21, 1999 sale of .9 grams and a December 21
> sale of .8 grams. Although Johnson's offenses were separated by less
> than two hours, they were nevertheless separate offenses because
> Davis left the residence after the first sale, defendants separately
> retrieved the second $100 worth of crack and Davis separately paid
> for the second crack purchase.

*United States v. Clark, supra,* 41 Fed.Appx. at 750.  Thus, this claim will not again be addressed by

this Court.  *See Oliver v. United States*, *supra*; *Stephen v. United States*, *supra.*

---

[3]  Petitioner was sentenced to eighty-four months on count three, his first §924(c)
conviction, and to 300 months on count five, the second §924(c) conviction, pursuant to the
mandatory minimum penalties prescribed by the statute. 21 U.S.C. §924(c)(1)(A)(ii);
§924(c)(1)(C)(ii).

Finally, petitioner asserts that his first §924(c) conviction was neither charged nor proven beyond a reasonable doubt.  This claim is plainly without merit.  Count 3 of the indictment charged petitioner with carrying a firearm during and in relation to a drug-trafficking crime pursuant to §924(c), *see* Doc. #9, and petitioner was found guilty on this charge after a jury trial.  Doc. #52.

For all of the foregoing reasons, claim four is without merit.

## V. CLAIM FIVE

In claim five, petitioner asserts that he was denied the effective assistance of counsel because his attorney refused to permit petitioner to testify on his own behalf:

> [P]etitioner... informed trial counsel that he wanted to testify on his own behalf. In fact, his testimony was discussed and planned prior to trial.
>
> During trial, petitioner again asked counsel was he going to call him to the stand and counsel replied, "yes," he would and to be patient.
> ***
>
> [C]ounsel stated that he would put the petitioner on the stand, but counsel took matters into his own hands and did not honor the petitioner's request without any explanation.
>
> ***
>
> Petitioner was completely excluded from participating in the decision made which waived his right to testify at trial.... Petitioner, had he testified, would have refuted the claims of petitioner being involved in the conspiracy.
>
> ***
>
> [T]rial counsel told petitioner that if he decided to testify; and if the jury found his testimony [i]ncredible, he would go to jail for a very long time. This was counsel's reason for not calling petitioner to the stand.

*Petition*, at 30-32.

Petitioner's trial attorney expressly denies these allegations, however:

I advised Mr. Johnson during the course of my representation, and at trial that he had the right to testify.

During the course of the trial, Mr. Johnson expressed an interest in testifying on his own behalf. I recommended and advised Mr. Johnson that it would not be in his best interest to testify.

As I recall, Mr. Johnson mentioned his desire to testify one time during the direct examination of a Government witness. I expressed to him that I understood his request, however, I advised that it would not be a good idea. After giving Mr. Johnson this advice, he did not raise the issue again.

*Affidavit of Neil W. Rosenberg*, attached as Exhibit A to *Return of Writ*.

The right to testify... on one's own behalf at a criminal trial... is one of the rights "that are essential to due process of law in a fair adversary process."

*Rock v. Arkansas*, 483 U.S. 44, 51 (1987), quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). The right is one of constitutional dimension, and "is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000)(citations omitted).

The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional. *Joelson*, 7 F.3d at 177. The defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide. *See Pelzer*, 1997 WL 12125 at *2 (citation omitted).

Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed. *Joelson*, 7 F.3d at 177. This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is "strongly presumed to have rendered adequate assistance" in carrying out the general duty "to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland v. Washington*, 466 U.S. 668, 688-90, 104

27

S.Ct. 2052, 80 L.Ed.2d 674 (1984)....

A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Joelson*, 7 F.3d at 177. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*United States v. Webber, supra,* 208 F.3d at 550-51.

Here, petitioner never indicated to the court that he desired to testify or that his attorney refused to permit him to testify, despite being given the opportunity to do so:

COURT: Now Mr. Rosenberg, do you wish to call any witnesses on behalf of your client, Mr. Johnson?

MR. ROSENBERG: No, Your Honor.

COURT: And he of course had been advised of his right to testify?

MR. ROSENBERG: He has, Your Honor.

*Transcript,* at 778. Petitioner's failure to advise his counsel and the Court of his desire to testify constitutes, under these circumstances, a waiver of his right to do so. Additionally, at his sentencing hearing, petitioner requested a continuance in order to obtain new counsel. His request was denied; however, petitioner made a lengthy statement to the Court in which he asserted his innocence, alleged that he had been denied the effective assistance of counsel due to his attorney's failure to raise the issue of a vindictive prosecution, and requested new counsel on appeal. Petitioner never mentioned that his attorney had failed to permit him to testify on his own behalf. *See Sentencing Transcript*, September 21, 2000. Upon review of the entire record, this Court concludes that petitioner's waiver of his right to testify may be inferred from the record before this Court.

28

## VI. CLAIM SIX

In claim six, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress audio recordings of drug transactions conducted among petitioner, co-defendant Clark, and Stanley Davis, the confidential informant. Petitioner argues that the audiotapes were inadmissible because they were of poor sound quality; he further alleges that his voice is not reflected on the audiotapes. Petitioner asserts that his attorney should have submitted the audiotapes for expert analysis, in order to determine whether the tapes had been tampered with or erased.  He requests an evidentiary hearing on this claim.

Petitioner's trial attorney, Neil Rosenberg, responds to these allegations as follows:

> I challenged the admissibility of the audio tape recordings and the transcripts of these recordings during the course of the trial.
>
> ***
>
> I reviewed the transcript of the audio recordings and the recordings with Mr. Johnson prior to trial, and advised him that if the transcripts were deemed by the Court to be reliable and subject to use by the jury, it would be very damaging to his defense and he should consider the plea bargain offered by the Government. The same advice was given relative to the audio tapes.
>
> The audio recordings were not submitted for scientific testing.

*Affidavit of Neil Rosenberg*, attached as Exhibit A to *Return of Writ*.

The record indicates that, contrary to petitioner's allegation, defense counsel objected to admission of the audio recordings on the basis that there had been "no testimony regarding who transcribed the tapes" and because "substantial portions" of the tapes were "inaudible and unintelligible." *Transcript,* at 343; 782. Pursuant to counsel's request, the Court conducted an *in camera* review of the audiotapes in the presence of both parties, and excised inaudible portions of the audiotape from audiotape transcripts. *Id*., at 343-351. The Court advised the jury as follows:

Ladies and gentlemen, first I want to give you some instructions. These audio tape-recordings of conversations which have been identified by this witness will be received into evidence in this case, and you will be provided with transcripts. In other words, someone has listened to the tape, typed a transcript of conversations on the tape, and you will have each – each of you will have a copy of the transcripts to assist you in listening to the tapes, and in clarifying portions of the tape which may be difficult to hear, and also to assist you in identifying the speakers.

It's important, however, that you understand that it is the tape-recordings that are the evidence in this case, not the transcripts. As I just told you, I have reviewed the transcripts and have attempted to edit them myself. I have listened carefully. You will see in the copies of the transcripts that you receive that certain parts of the transcripts have been blacked out in pencil, those are my editings, don't pay any attention to the parts that I have blacked out. I have determined that they are not reliable reflections of what is in the transcripts, so just disregard anything that has been blacked out in pencil. On a few occasions I have penciled in some additional words that I was able to hear that are not in the transcript, you can consider those and listen and see if you agree.

But, again, the important – the important concept here is that it is the tape-recordings and what you hear on them that constitute the evidence and not the transcripts. If you cannot determine from the tape that any particular words were spoken, then you should disregard the transcript insofar as those words are concerned.

Similarly, you should consider the tapes and the testimony regarding the identity of the speakers and not the transcript in determining the identity of the speakers.

*Id.*, at 354-55.

Petitioner has failed to establish the ineffective assistance of counsel under *Strickland* due to his attorney's failure to object to admission of audiotapes. The record fails to reflect that the audiotapes were inadmissible. Nothing in the record supports petitioner's allegation that the tapes had been tampered with, and nothing in the record supports petitioner's allegation that any expert would have testified that it was not petitioner's voice reflected on the audiotapes. Stanley Davis, the

confidential informant who was present during the alleged drug transactions and who wore the recording device, testified that he listened to the tapes, and that the tapes accurately reflected the events that had transpired. Davis identified Johnson's voice on the audiotapes.

No evidentiary hearing is required where the record conclusively shows that petitioner is entitled to no relief. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003), citing *Fontaine v. United States*, 411 U.S. 213, 215 (1973); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Such are the circumstances here.

## VII. CLAIM SEVEN

In claim seven, petitioner asserts that he was denied the effective assistance of counsel due to his attorney's failure to object to constitutionally defective jury instructions, and appellate counsel's failure to raise this issue on direct appeal. Petitioner complains of the following language:[4]

> Section 924(c)(1)(A) prohibits using or carrying a firearm during and in relation to a drug-trafficking crime. In this case, the indictment charges the defendants with using a firearm by brandishing it. To brandish a firearm means to display all or part of the firearm or otherwise make the presence of the firearm known to another person in order to intimidate that person regardless of whether the firearm is directly visible to that person.
>
> A person who brandishes a firearm may also be carrying the firearm. However, merely carrying a firearm concealed on one's person without drawing attention to the firearm for the purpose of intimidation is not sufficient to constitute brandishing a firearm.
>
> To carry a firearm means to physically transport or move the firearm while having it on or about one's person. The firearm does not have to brandished or its presence made known to another person in order to be carried. For example, a firearm can be carried by transporting it on one's person concealed in clothing throughout the drug transaction with no reference being made to the presence of the

_____

[4] Petitioner specifically addresses the italicized portions of the quoted language. The Court has included the amplified instructions in order to place the challenged portion in context.

31

> firearm. However, merely storing a firearm near drugs or drug proceeds without some active employment of the firearm is not sufficient to constitute carrying or brandishing the firearm. The government must prove that the firearm was either brandished or carried during the commission of a drug-trafficking crime *which has been proved beyond a reasonable doubt to have been committed by the defendant.*
>
> The government must also prove that the firearm was brandished or carried in relation to the commission of a drug-trafficking crime committed by the defendant....

*Transcript,* at 870-71. Petitioner argues that the challenged language improperly advised the jury that a drug trafficking offense had been proved beyond a reasonable doubt and erroneously advised the jury regarding the standard of proof. This Court does not agree. When viewed in the context of the entire jury instructions, the statement complained of is not improper. The jury was instructed appropriately that in order to prevail on the §924(c)(1)(A) charge, the government must prove beyond a reasonable doubt that petitioner committed a drug trafficking crime, during which time he either brandished or carried a firearm. The jury was instructed properly regarding the government's burden of proof.

> Now, the law presumes a defendant to be innocent of crime. A defendant is presumed to be innocent even though he has been accused of a crime through the return of an indictment. Thus a defendant begins a trial with a clean slate with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against an accused, so the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all of the evidence in the case.
>
> Now, I told you at the outset that I would be explaining in some detail what is required by the burden of proof beyond a reasonable doubt, and here is the instruction on reasonable doubt.
>
> It is not required that the government prove guilt beyond all possible

32

doubt.  The test is one of reasonable doubt.  A reasonable doubt is a doubt based upon reason and common sense.  It would be the kind of doubt that would make a reasonable person hesitate to act.

Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs.  Of course a defendant is never to be convicted on mere suspicion or mere conjecture, and the burden is always upon the prosecution to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant, for the law never imposes upon a defendant the burden or duty of calling any witnesses or producing any evidence.  So if the jury should view the evidence in the case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, then the jury should of course adopt the conclusion of innocence.

A reasonable doubt exists whenever, after the careful, entire, and impartial consideration of all of the evidence in the case, the jurors do not feel an abiding conviction to a moral certainty that a defendant is guilty of the offense charged.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence, and since the burden is always upon the United States to prove the accused guilty of every essential element of the crime charged beyond a reasonable doubt, then the defendant has the right to rely upon the failure of the United States to establish such proof.

*Transcript*, at 844-845.

Before a federal habeas court may overturn a conviction based on improper jury instructions, the court must find not only that the instructions were erroneous, but also that, taken as a whole, the instructions were so infirm that they rendered the entire trial fundamentally unfair.  *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1986)(citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986)).  Even if a challenged portion of the jury instructions is improper, that fact does not necessarily render the jury instructions improper as a whole. *Cupp v. Naughten*, 414 U.S. 141 (1973). "The petitioner must

show more than that the instructions are undesirable, erroneous, or universally condemned." *Wood v. Marshall, supra*, 790 F.2d at 551 (citing *Henderson v. Kibbe*, 431 U.S. at 154.)

Petitioner has failed to meet this standard. Petitioner likewise has failed to establish the ineffective assistance of counsel due to his attorney's failure to object to the jury instruction or his appellate counsel's failure to raise the issue on appeal. Claim seven is without merit.

## VIII.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

<u>Dec 13, 2004</u>                                                    <u>         *s/Norah McCann King*         </u>
                                                                         Norah McCann King
                                                                         United States Magistrate Judge